UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
JIN YUNG CHUNG,                                             :
                                                            :        **MEMORANDUM AND ORDER
                          Plaintiff,                        :         ADOPTING REPORT AND
                                                            :          RECOMMENDATION**
           -against-                                        :
                                                            :         10-CV-2301(DLI)(CLP)
YOKO SANO, FORT LEE ZAIYA, INC., d/b/a                      :
PARISIENNE BAKERY, ZAIYA, INC. (New                         :
Jersey corporation), ZAIYA, INC. (New York                  :
Corporation), SHOIE YOSIDA, and IKUE                        :
YOSIDA,                                                     :
                                                            :
                          Defendants.                       :
------------------------------------------------------------ x

**DORA L. IRIZARRY, U.S. District Judge:**

Plaintiff Jin Young Chung ("Plaintiff") brought this diversity action alleging: (i) breach of obligation to repay a loan against defendants Zaiya Fort Lee, Zaiya, Inc. in New York ("Zaiya NY") and Zaiya, Inc. in New Jersey ("Zaiya Hackensack"); (ii) entitlement to the reasonable value of the shares of corporate stock held by Plaintiff in the three entities and to liquidate her interest in such shares; (iii) defamation and trade defamation against defendant Yoko Sano; (iv) conversion of plaintiff's stock interests against defendant Yoko Sano; and (v) breach of fiduciary duty by defendants. On July 15, 2010, Plaintiff moved for default judgment, and on November 3, 2010, Plaintiff submitted a letter to the court requesting that she be allowed to withdraw her claims against Zaiya NY. U.S. Magistrate Judge Cheryl L. Pollak issued a Report and Recommendation, dated February 25, 2011, recommending that Plaintiff's motion for default judgment be denied in its entirety and Plaintiff's motion to withdraw her claims against

1

Zaiya NY be granted. (*See* Docket Entry No. 38 ("R & R").) Plaintiff objected. For the reasons set forth below, the R & R is adopted in its entirety and expanded upon herein.[1]

## DISCUSSION[2]

**I.     Legal Standards**

Where a party objects to a R & R, a district judge must make a *de novo* determination with respect to those portions of the R & R to which the party objects. *See* FED. R. CIV. P. 72(b); *United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997). Portions of the R & R to which the parties have not objected are reviewed for clear error. *See Orellana v. World Courier, Inc.*, 2010 WL 3861013, at *2 (E.D.N.Y. Sept. 28, 2010). The district court may then "accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." FED. R. CIV. P. 72(b); *see also* 28 U.S.C. § 636(b)(1).

**II.    Analysis**

The Magistrate Judge recommends that Plaintiff's motion to withdraw her claims against Zaiya NY be granted and Plaintiff's motion for default judgment be denied in its entirety. (*See* R & R.) Although Plaintiff states in her objections that "no deference is to be applied" to the R & R, (*see* Plaintiff's Objection to Report and Recommendations, Docket Entry No. 40 ("Pl. Obj.") at 12), the court will review *de novo* only those portions of the R & R to which Plaintiff objects. *See* FED. R. CIV. P. 72(b); *Orellana*, 2010 WL 3861013 at *2. Plaintiff does not object to the Magistrate Judge's recommendations regarding jurisdiction or choice of law, or the recommendation that Plaintiff's motion to withdraw her claims against Zaiya NY be granted.

---

[1] The court notes that Plaintiff's objections to the R & R are 32 pages. Although the court's individual rules allow such submissions to be no more than 25 pages, the court considers Plaintiff's objections in full. Plaintiff's counsel is admonished to adhere to the individual rules of this court in the future.

[2] Familiarity with the facts and background of this matter as set forth in the R & R is assumed, and, thus, shall not be repeated herein. Only those facts necessary to the discussion shall be set forth herein.

2

The court finds no clear error as to those recommendations and, thus, upon due consideration, adopts those findings in their entirety.

Plaintiff does, however, object to the Magistrate Judge's recommendation that Plaintiff's motion for default judgment be denied for failure to state a claim. Plaintiff also argues that the court may not deny a motion for default judgment for failure to state a claim, because the court may not take any action on a motion for default judgment other than determining the amount of damages. Thus, the court will determine *de novo* whether the court may take action other than determining the amount of damages when addressing a motion for default judgment, and whether, here, Plaintiff has in fact stated a claim upon which relief can be granted for the five claims alleged in the Complaint.

A. *Court's Power to Deny Default Judgment Where Complaint Fails to State a Claim*

Plaintiff argues that on a motion for default judgment, the court may not make any inquiries or findings other than a determination of the amount of damages.[3] Plaintiff's position is unfounded. FED. R. CIV. P. 55(a) provides that, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk shall enter the party's default." However, while all well-pleaded factual allegations in the complaint are accepted as true upon entering a default, the district court may still deny a motion for default judgment where the complaint fails to state a cause of action.

---

[3] Plaintiff further claims that the court, including the clerk, acted improperly during the proceedings in the instant action. First, Plaintiff "objects to the clerk's inordinate delay . . . in noting defendant Yoko Sano's default." (*See* Pl. Obj. at 12-13.) The clerk here has already entered the default, thus, Plaintiff's "objection" in this regard is moot. Furthermore, the court declines to create a rule requiring a clerk to enter a default within 72 hours of movant's request. Second, Plaintiff argues that by requiring Plaintiff to utilize certain methods to ensure service was properly made upon defendants and verifying that the court has jurisdiction to hear the action, the court "becom[e] an opposing advocate of plaintiff rather than remaining as a neutral arbiter of the dispute at all stages." (*See id.* at 21.) Contrary to Plaintiff's assertions, the Magistrate Judge properly acted to ensure that the complaint and proceedings in this action complied with the Federal Rules of Civil Procedure. *See* FED. R. CIV. P. 5, 8(a), 12(h)(3).

3

*See Orellana*, 2010 WL 3861013 at *2 ("[a] court should deny a motion for entry of a default judgment if the facts a plaintiff alleges in his complaint, taken to be true, fail to state a valid cause of action upon which the relief sought can be granted"); *Duffy v. Master Waterproofers, Inc.*, 2010 WL 3781057, at *1 (E.D.N.Y. Sept. 17, 2010) (adopting the magistrate judge's recommendation that "Plaintiff's default judgment be denied . . . because Plaintiffs had failed to provide 'legal support for entry of such judgment'"); *Garden City Boxing Club, Inc. v. Giambra*, 2004 WL 1698633, at *1 (W.D.N.Y. Jul. 27, 2004) ("[p]rior to entering default judgment, the court must determine whether the facts alleged in the Complaint are sufficient to state a claim for relief as to each cause of action for which the plaintiff seeks default judgment"). Plaintiff provides no support to the contrary. In fact, one of the cases relied on by Plaintiff in her objections to the R & R, (*see* Pl. Obj. at 18), clearly states that "a district court has discretion under [FED. R. CIV. P.] 55(b)(2) once a default is determined to require proof of necessary facts and need not agree that the alleged facts constitute a valid cause of action."[4] *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981). Therefore, the court has the authority to deny a motion for default judgment where a plaintiff fails to state a claim, even if defendants do not object to the motion.

B. *Plaintiff's Failure to State a Claim Upon Which Relief Can Be Granted*

In order to state a claim for relief, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" so defendants have "fair notice of what the . . . claim is and the grounds upon which it rests." FED. R. CIV. P. 8(a)(2); *Bell Atlantic Corp.*

---

[4] The other cases cited by Plaintiff as the "leading cases" on this issue in the Second Circuit merely stand for the proposition that FED. R. CIV. P. 55(b)(2) allows but does not require the district court to conduct a hearing when determining damages. *See* Pl. Obj. at 14 (citing *Action, S.A. v. Marc Rich & Co.*, 951 F.2d 504 (2d Cir. 1991) and *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38 (2d Cir. 1989)). Neither case supports Plaintiff's argument that when a party has defaulted, the court may only determine the amount of damages, and, thus, may not deny a motion for default based on the court's finding that the complaint fails to state a cause of action.

4

*v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). To satisfy this standard, a complaint must allege "enough facts to state a claim that is plausible on its face." *Id.* at 570. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint . . . has not shown that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) (internal citations and quotation marks omitted). "[R]ecitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" to state a claim to relief pursuant to Fed. R. Civ. P. 8(a)(2). *Id.* at 1949.

      i.      Count One: $400,000 Loan Claim

First, Plaintiff claims that Zaiya Fort Lee and Zaiya Hackensack (collectively, the "Corporate Defendants") breached their obligation to repay a loan of $400,000.00 plus interest to Plaintiff. To state a claim of breach of contract in New York, a Plaintiff must allege the following in its complaint: "(1) the existence of a contract; (2) performance by the party seeking recovery, (3) non-performance by the other party, and (4) damages attributable to the breach." *RCN Telecom Svcs., Inc. v. 202 Centre Street Realty LLC*, 156 Fed. Appx. 349, 350-51 (2d Cir. 2005).

Here, the court cannot find that Plaintiff has sufficiently alleged that she entered into a loan agreement with the Corporate Defendants or even that the Corporate Defendants received the money from the loan. The Complaint states only that, "[d]uring the course of the business relationships with the various entity-defendants and their primary shareholder, Hirokazu Sano, plaintiff loaned the sum of $400,000.00 to defendants and has not been repaid of the principal due and owing and interest." (Compl. ¶ 13.) Although the Complaint alleges that Plaintiff gave $400,000.00 to defendants and has not yet been repaid, Plaintiff fails to allege facts that show the

existence of an actual agreement between herself and the defendants whereby the defendants would be required to repay a sum provided by Plaintiff.

Even considering the testimony provided at the November 2, 2010 inquest hearing and other material submitted by Plaintiff, the court still cannot find that Plaintiff's allegations are sufficient to show a loan agreement was made between Plaintiff and the Corporate Defendants. Instead, all of the allegations and material submitted to the court by Plaintiff show that if any loans were indeed made by Plaintiff, they were made to Hirokazu Sano in an individual capacity. During the November 2, 2010 inquest hearing, Plaintiff testified that she initially loaned Hirokazu Sano $190,000, and subsequently loaned Hirokazu Sano a total of $210,000 "to open up new business throughout the years from 2003 to 2006." (*See* Tr. of Nov. 2, 2010 Hearing at 8-9.) She also testified that "[w]henever [Hirokazu Sano] needed money he asked [Plaintiff] so [she] gave him a loan . . . ." (*See id.* at 9.) Thus, Plaintiff testified that she loaned the $400,000.00 at issue here to Hirokazu Sano, not the Corporate Defendants. Even Stefano Park, the third-party witness who testified at the November 2, 2010 hearing, stated that Plaintiff loaned *Hirokazu Sano* the money. (*See id.* at 23-25.) Mr. Park did not mention any loan or loan agreement between Plaintiff and the Corporate Defendants. (*See id.*)

Similarly, the journal entries submitted with Plaintiff's supplemental declaration do not support the assertion that Plaintiff loaned money to the Corporate Defendants or had any agreement whereby the Corporate Defendants would repay the loan made to Hirokazu Sano. (*See* Docket Entry No. 24, Ex. 1.) While some of the entries note that loans were given to Hirokazu Sano to cover certain business expenses, Plaintiff never indicated how the loan amounts were allocated or whether the loans were actually expended for their intended use.

The only other evidence of the alleged loans is a copy of a check for $190,000 dated March 18, 2003 and made out to "Chung Chase," an account Plaintiff held jointly with Hirokazu Sano. (Docket Entry No. 21 ("Chung Decl.") ¶ 16 and Ex. 4.) Again, this fails to show a loan agreement was made between Plaintiff and the Corporate Defendants. *See Schaffe v. SimmsParris*, 2011 WL 833985, at *1 (2d Dep't 2011) (check without notation that it was a loan, and that did not otherwise indicate its purpose, does not prove the existence of a loan agreement).

Furthermore, neither Plaintiff's allegations nor the evidence or testimony Plaintiff provided to the court in support of her claims show that Plaintiff made the loans to Hirokazu Sano in his capacity as a majority shareholder of either of the Corporate Defendants. Thus, even if the court were to find a loan agreement existed between Plaintiff and Hirokazu Sano, the court agrees with the Magistrate Judge that all of the allegations and material set forth by Plaintiff indicate that the loan was made to Hirokazu Sano in an individual capacity. As Plaintiff fails to name the Estate of Hirokazu Sano in this action, she has no cause of action as to any named defendants.

Moreover, even if the court were to find that a loan agreement existed between Plaintiff and the Corporate Defendants, Plaintiff fails to allege any terms of the agreement, such as when payment was due or any other conditions of the loan. Thus, it is impossible for the court to determine whether either party has breached the agreement. The fact that the loan has not yet been repaid does not alone establish that the Corporate Defendants have breached any agreement. Instead, Plaintiff must plead the agreed upon time for performance or, if no time for performance was agreed upon, Plaintiff must allege facts that show a reasonable time for performance has passed. *See Bernstein v. La Rue*, 120 A.D.2d 476, 477 (2d Dep't 1986) (holding breach of contract can occur only after time for performance expires).

In addition, in New York, a loan made without reference to a repayment schedule is payable on demand. *See Seattle Pacific Indus., Inc. v. Golden Valley Realty Assoc.*, 54 A.D.3d 930, 931 (2d Dep't 2008) ("since the advances at issue were made without any specified time of repayment, they were payable on demand"). Here, Plaintiff fails to allege that she demanded repayment from any of the defendants. Plaintiff argues in her objections to the R & R that her demand of repayment was "evidenced by defendant [Yoko] Sano's issuance of a check in the amount of $100,000.00 as a partial repayment, which ultimately did not pay out." (Pl. Obj. at 25.) However, even if taken to be true, this statement only stands for the proposition that defendant Sano issued Plaintiff a check as a partial repayment, not that Plaintiff demanded repayment from Yoko Sano, let alone any of the Corporate Defendants. If Plaintiff did indeed demand repayment, then she must plead factual allegations stating as such.

Therefore, for the reasons stated above, Plaintiff's motion for default is denied as to Count One of the Complaint for failure to state a claim. Plaintiff is granted leave to amend her Complaint to allege facts that state a claim of breach of an agreement against the Corporate Defendants or against Hirokazu Sano's Estate if Plaintiff wishes to add the Estate as a defendant in this action.

ii. Count Two: Valuation of Stock Shares

Second, Plaintiff claims that she is "entitled to the reasonable value of the shares of corporate stock held by her in the three separate entities and entitled to liquidate her interest in such shares." (Compl. ¶¶ 14, 26.) In order for Plaintiff to show she is entitled to the value of shares of corporate stock, she must allege facts that show she owns shares of the stock and has a right to liquidate her interest in those shares. Here, the Complaint includes only the conclusory allegations that Plaintiff is "entitled to the reasonable value of the shares of corporate stock" in

the Defendant Corporations, (*see* Compl. ¶ 26), and that Plaintiff owned certain percentages of each of the Corporate Defendants, (*see* Compl. ¶ 14). Thus, the Complaint is devoid of any factual allegations that show a basis for Plaintiff's claim to the reasonable value of the shares of corporate stock and, consequently, fails to state a claim for relief.

Furthermore, the supplemental materials provided to the court also fail to show Plaintiff's ownership of the stock shares. All but one document presented to the court regarding this issue only shows Hirokazu Sano's intention to have the Corporate Defendants issue shares to Plaintiff if certain conditions were met. (*See* Chung Decl., Ex. 1, July 18, 2008 Fax from Hirokazu Sano ("I hold 100% of shares for Fort Lee Branch. Please give 5% of shares to Nagsaka, . . . 20% to Jaime . . . if they are working hard . . . .").) These documents do not reflect an actual ownership interest in the companies. Although the final document from Hirokazu Sano included in Exhibit 1 to the Chung Declaration states that, "[r]egarding the factory stocks . . . Jamie holds 10%," it is unclear whether "the factory" is one of the Corporate Defendants or another entity not named in this action. (*See* Chung Decl., Ex. 1 at 11.) Moreover, even if the court accepts as true Plaintiff's allegation that Yoko Sano was in the process of transferring Plaintiff's ownership of the business entities, this allegation does nothing to show that these shares belong to Plaintiff. Thus, Plaintiff fails to provide factual allegations reflecting her ownership in either of the Corporate Defendants or provide any basis under the law that would allow her to demand that the Corporate Defendants liquidate her shares and pay her based on a valuation of the ongoing business.

For the foregoing reasons, the court adopts the Magistrate Judge's recommendation and denies Plaintiff's motion for default as to Count Two of the Complaint for failure to state a

claim. Plaintiff is granted leave to amend her Complaint to allege facts that state a claim for the value of shares of corporate stock in the entities at issue here.

iii. Count Three: Defamation and/or Trade Defamation

Third, Plaintiff brings claims of defamation and trade defamation against Yoko Sano based on Ms. Sano's allegedly false accusations, which were allegedly repeated in an action filed in the Probate Court of Bergen County Superior Court in October 2009, that Plaintiff forged Hirokazu's signature so Plaintiff could collect life insurance policies if and when Hirokazu Sano died. (Compl. ¶¶ 18, 28.) Plaintiff alleges that Yoko Sano's "actions in this regard were willful, wanton, malicious and knowingly false." (Compl. ¶ 18.)

To sufficiently plead a claim of defamation under New York law, a plaintiff must show "a false statement, published without privilege or authorization to a third party, constituting fault as judged by, at a minimum, a negligence standard, and, it must either cause special harm or constitute defamation *per se*." *Ogbon v. Beneficial Credit Svcs., Inc.*, 2011 WL 347222, at *5 (S.D.N.Y. Feb. 1, 2011) (quoting *Dillon v. City of New York*, 261 A.D.2d 34, 38 (1st Dep't 1999)). Special harm is defined as "the loss of something having economic or pecuniary value" and "must be fully and accurately stated, with sufficient particularity to identify actual losses." *Ahmed v. Bank of America*, 2010 WL 3824168, at *5 (E.D.N.Y. Sept. 24, 2010) (quoting *Thai v. Cayre Group, Ltd.*, 726 F. Supp. 2d 323, 329 (S.D.N.Y. 2010)); *see also Liberman v. Gelstein*, 80 N.Y.2d 429, 434-35 (1992). Defamation *per se* involves statements: "(i) charging plaintiff with a serious crime; (ii) that tend to injure another in his or her trade, business or profession; (iii) that plaintiff has a loathsome disease; or (iv) imputing unchastity to a woman." *See Walia v. Vivek Purmasir & Assocs.*, 160 F. Supp. 2d 380, 394 (E.D.N.Y. 2000) (citing *Liberman*, 80 N.Y.2d at 435). A claim of defamation must also "adequately identif[y] the purported

communication, and [indicate] who made the communication, when it was made, and to whom it was communicated." *Fuji Photo Films U.S.A., Inc. v. McNulty*, 669 F. Supp. 2d 405, 411 (S.D.N.Y. 2009) (citations and internal quotation marks omitted).

However, a "statement made in the course of legal proceedings is absolutely privileged" and, thus, not subject to defamation claims "if it is at all pertinent to the litigation." *Yahoo, Inc. v. Nakchan*, 2011 WL 321150, at *2 (S.D.N.Y. Jan. 11, 2011) (quoting *Lacher v. Engel*, 33 A.D.3d 10, 13 (1st Dep't 2006)). This privilege "is limited to statements which are not only pertinent to the subject matter of the lawsuit[,] but are made 'in good faith and without malice.'" *Lacher*, 33 A.D.3d at 13.

In New York, "the tort of trade defamation is the knowing publication of a false matter derogatory to the plaintiff's business calculated to prevent or interfere with relationships between the plaintiff and others to its detriment." *Jurlique, Inc. v. Austral Biolab Pty., Inc.*, 187 A.D.2d 637, 639 (2d Dep't 1992). "The communication must play a material and substantial part in inducing others not to deal with plaintiff." *Id.* (citations omitted). The result of the communication must be that "special damages, in the form of lost dealings, are incurred," and "[i]n pleading special damages, "actual losses must be identified and causally related to the alleged tortuous act." *Waste Distillation Tech. v. Blasland & Bouck Engs., P.C.*, 136 A.D.2d 633, 634 (2d Dep't 1988).

The court agrees with the Magistrate Judge that Plaintiff's claims of defamation and trade defamation both appear to be based on two incidents: (1) in mid-2009, Yoko Sano "claimed that plaintiff had 'forged' the signature of Hirokazu Sano . . . so that she could collect the [insurance] policy proceeds if and when Hirokazu Sano died," and (2) in October 2009, Yoko Sano repeated

the false statements in an action filed in Probate Court. (Compl. ¶ 18.) Plaintiff fails to state a claim of defamation or trade defamation with regard to either incident.

Plaintiff's allegation that, in mid-2009, Yoko Sano claimed Plaintiff forged Hirokazu Sano's signature so she could collect insurance policy proceeds, does not constitute a valid defamation claim because there is no allegation in the Complaint that the statement was "published without privilege or authorization to a third party." *See Ogbon*, 2011 WL 347222 at *5. Even if the court finds that Plaintiff sufficiently alleges publication based on allegations in Plaintiff's supplemental submissions which state that Yoko Sano made the false statements to "approximately two dozen employees" managed by Plaintiff, Plaintiff's defamation claim still fails because Plaintiff's allegations do not show special harm or defamation *per se*. (*See* Chung Decl. ¶ 12.) Plaintiff fails to plead special harm because there is no allegation that Plaintiff lost something having economic or pecuniary value, or any statement identifying actual losses. Moreover, none of the situations constituting defamation *per se* exist here. *See Walia*, 160 F. Supp. 2d at 394. Even if Plaintiff argued that the statements allegedly made by Yoko Sano "tend to injure [her in] her trade, business or profession," an allegation of forgery on an insurance document does not constitute an accusation of misconduct or unfitness in Plaintiff's profession in the food services industry and, thus, there is no defamation *per se*. *See Gatz v. Otis Ford, Inc.*, 262 A.D.2d 280, 281 (2d Dep't 1999) (noting that a statement is defamatory *per se* when it accuses an individual of misconduct or unfitness in their profession); *Chiavarelli v. Williams*, 256 A.D.2d 111, 113 (1st Dep't 1998) (to constitute defamation *per se* "the challenged statements must be more than a general reflection upon [the plaintiff's] character or qualities, and must suggest improper performance of his duties or unprofessional conduct" (internal quotation marks omitted)). Therefore, the defamation claim regarding Yoko Sano's statements allegedly made to

other employees fails because the essential elements of defamation are absent from the Complaint.

Plaintiff's allegation that Yoko Sano repeated the false statements in an action filed in Probate Court in October 2009 is also insufficient. (Compl. ¶ 18.) Plaintiff claims that the alleged defamation "was not privileged by the litigation privilege doctrine, [and was] an intentional, wanton, malicious and willful action intended to humiliate and defame plaintiff." (Compl. ¶ 29.) However, Plaintiff fails to plead sufficient facts to show how the statements in the Probate Court action were made, to whom they were communicated, or even whether the statements were in fact made during the course of legal proceedings. Thus, the Court cannot determine whether the comments are privileged. Furthermore, even if the statements were not subject to privilege, Plaintiff does not allege that they were "published without . . . authorization to a third party" as required for a valid claim of defamation. *See Ogbon*, 2011 WL 347222 at *5. As a result, Plaintiff has not pleaded sufficient facts to state a claim of defamation based on the statements made in the Probate Court action.

Plaintiff also makes a claim of trade defamation based on the two incidents described above. Plaintiff claims that Yoko Sano "falsely accusing her of forgery . . . relating to her individual and business dealings . . . as an employee or Manager of one or more of the defendant business entities." (Compl. ¶ 28.) However, Plaintiff fails to allege facts that show Yoko Sano's statements "play[ed] a material and substantial part in inducing others not to deal with plaintiff," which is an essential element of a valid claim of trade defamation. *See Jurlique, Inc.*, 187 A.D.2d at 639. Although Plaintiff alleges in her supplemental declaration that Yoko Sano made the false statements "to various third-parties . . . including approximately two dozen employees" that Plaintiff managed, which "smeared Plaintiff all over the industry that [she] worked faithfully

in," Plaintiff fails to allege that those people declined to work with Plaintiff as a result of the statements. (*See* Chung Decl. ¶ 12.) Therefore, Plaintiff fails to properly allege the essential elements of a claim of trade defamation because Plaintiff fails to identify "actual losses" or show these losses are "causally related" to Yoko Sano's statements.[5] *See Waste Distillation Tech.*, 136 A.D.2d at 634.

For the reasons discussed above, the court adopts the Magistrate Judge's recommendation and denies the motion for default as to Count Three of the Complaint due to Plaintiff's failure to allege facts supporting a plausible claim for relief under the necessary elements of a claim of defamation or trade defamation. Plaintiff is granted leave to amend her Complaint to allege facts that state a claim of defamation and/or trade defamation.

        iv.        Count Four: Conversion

Next, Plaintiff brings a claim of conversion, alleging that "Yoko Sano converted plaintiff's stock interests in the two [corporate] entities by disavowing that such stock interests exist[,] shielding documentary proof of such shareholder interest from surfacing in the proper light, and [. . .] improperly asserting wrongful dominion and control over the stock shares of the disputed entities." (Compl. ¶ 31.) Plaintiff also states that Yoko Sano "effectively transferred one hundred percent of the stock-ownership of all or substantially all of the businesses previously owned by Hirokazu Sano" for their own benefit. (Compl. ¶ 19.)

In New York, to establish a cause of action for conversion, "plaintiff must show legal ownership or an immediate superior right of possession to a specific identifiable thing[,] and

---

[5] Plaintiff also argues that if there were any issue as to the extent of damage Yoko Sano's assertions caused in the community, the Magistrate Judge should have raised the issue during the November 2, 2010 inquest hearing or should have requested a proffer. (*See* Pl. Obj. at 28.) However, Plaintiff provides no support for the proposition that a Magistrate Judge must hold inquest hearings or proffers to ensure Plaintiff properly pleads the elements of the claims raised in her complaint.

must show that the defendant[] exercised an unauthorized dominion over the thing in question . . . to the exclusion of plaintiff's rights." *Palermo v. Taccone*, 79 A.D.3d 1616, 1620 (4th Dep't 2010) (citing *Five Star Bank v. CNH Capital Am., LLC*, 55 A.D.3d 1279, 1281 (4th Dep't 2008)). Generally, claims of conversion require "[t]angible personal property or a specific sum of money [to] be involved." *Shapsis v. Kogan*, 2011 N.Y. Slip Op. 50014(U), at *9 (N.Y. Sup. Ct., Kings County, Jan. 7, 2011) (citing *Independence Discount Corp. v. Bressner*, 47 A.D.2d 756, 757 (2d Dep't 1975). However, physical representations of intangible property can be considered tangible property for purposes of conversion. Thus, in awarding damages pursuant to a finding of conversion of stock certificates, the court could award the value of the shares of stock, which are represented by physical stock certificates that were converted. *Agar v. Orda*, 264 N.Y. 248, 251 (1974). In addition, conversion can include the taking of "electronic records that [are] stored on a computer and [are] indistinguishable from printed documents." *Thyroff v. Nationwide Mut. Ins. Co.*, 8 N.Y.3d 283, 292-93 (2007).

Here, Plaintiff fails to state a claim of conversion because she claims that Yoko Sano converted stock *interests*, not physical property or physical representations of intangible property. Although the court could award the value of the shares of stock represented by stock certificates that were converted, Plaintiff fails to allege that she possesses stock certificates or any other physical manifestation of the allegedly converted stock interests. *See Agar*, 264 N.Y. at 251. Moreover, Plaintiff fails to allege facts that show an ownership interest in either of the companies. The letters provided by Plaintiff in support of her claim represent only a promise that a certain percentage of the Corporate Defendants would be transferred to her if she is "working hard." (*See* Chung Decl., Ex. 1, July 18, 2008 Fax from Hirokazu Sano ("I hold 100% of shares for Fort Lee Branch. Please give 5% of shares to Nagsaka, . . . 20% to Jaime . . . if they

are working hard . . . .").) They do not constitute stock certificates or reflect an actual ownership interest in the either of the Corporate Defendants. Additionally, that Yoko Sano "improperly assert[ed] wrongful dominion and control over all the stock shares of the disputed entities," (*see* Compl. ¶ 31), and "absconded or transferred" the shares at issue to her parents, in no way supports the contention that those shares belonged to Plaintiff, (*see* Pl. Obj. at 30). Therefore, as Plaintiff has only alleged that Yoko Sano converted Plaintiff's stock interests, and not any physical manifestation of those interests, Plaintiff has not stated a claim for relief from conversion. *See Rushing v. Nexpress Solutions, Inc.*, 2009 WL 104199, at *6 (W.D.N.Y. Jan. 14, 2009) (court held plaintiff had not stated a claim for relief where plaintiff claimed that defendants converted his patentable *idea* instead of any patent *document*).

As Plaintiff fails to allege a valid claim of conversion, the court adopts the Magistrate Judge's recommendation and denies Plaintiff's motion for default as to Count Four of the Complaint. Plaintiff is granted leave to amend her Complaint to allege facts that state a claim of conversion.

v. Count Five: Breach of Fiduciary Duty

Finally, Plaintiff alleges that "defendants committed breach[es] of fiduciary duty against plaintiff and various others" by undertaking the other actions alleged in the Complaint. (Compl. ¶¶ 32, 33.) To establish a breach of fiduciary duty, "a plaintiff must prove the existence of a fiduciary relationship, misconduct by the defendant, and damages directly caused by the defendant's misconduct." *Newman v. Herbst*, 2011 WL 684165, at *7 (E.D.N.Y. Feb. 15, 2011) (citing *Kurtzman v. Bergstol*, 40 A.D.3d 588, 590 (2d Dep't 2007)).

Here, Plaintiff fails to allege that Yoko Sano, in her personal capacity, owed Plaintiff a fiduciary duty. Although Plaintiff claims in her opposition to the R & R that paragraph 21 of the

Complaint "unequivocally states that defendant Yoko Sano was the owner of the entities," it actually states only that defendants entered into agreements "that w[ere] intended to pass 'ownership' of various business entities from Yoko Sano and the Estate of Sano to Yosida." (*See* Pl. Obj. at 31; Compl. ¶ 21.) Plaintiff fails to allege facts that show Yoko Sano is an owner or majority shareholder in any of the Corporate Defendants, with the exception of the statement in the Chung Declaration that "Yoko Sano is the fiduciary of all the shareholders." (Chung Decl. ¶ 13.) Not only is this conclusory statement insufficient to show that Yoko Sano owes a fiduciary duty to shareholders of the Corporate Defendants, but Plaintiff also fails to properly allege that she was even a shareholder in either of the Corporate Defendants. (*See supra* Sections II.B.ii and II.B.iv.) Thus, Plaintiff fails to show the existence of a fiduciary relationship between Yoko Sano and Plaintiff.[6] In addition, Plaintiff fails to allege that any of the defendants other than Yoko Sano owed her a fiduciary duty, or even any circumstances that would give rise to such an inference.

In sum, even accepting Plaintiff's allegations as true, Plaintiff fails to state a claim of breach of fiduciary duty because she does not sufficiently allege that any of the defendants have a fiduciary relationship with Plaintiff. Thus, the court adopts the Magistrate Judge's recommendation and denies Plaintiff's motion for default as to Count Five of the Complaint. Plaintiff is granted leave to amend her Complaint to allege facts that state a claim of breach of fiduciary duty.

---

[6] Even if Plaintiff means to allege that Yoko Sano breached her fiduciary duty as administratrix of Hirokazu Sano's Estate, the Complaint only names Yoko Sano in her personal capacity, not as administratrix of the Estate. Thus, the court need not address the sufficiency of a claim against Hirokazu Sano's Estate at this time.

## CONCLUSION

For the reasons discussed above, the R & R is adopted in its entirety and expanded upon as set forth above; Plaintiff's motion to withdraw her claims against Zaiya NY is granted and Plaintiff's motion for entry of default judgment is denied as to all Counts. Plaintiff may file and serve an amended complaint by May 2, 2011. If Plaintiff fails to amend his complaint by May 2, 2011, as directed by this order, and/or the amended complaint fails to correct the deficiencies of the instant complaint or otherwise fails to satisfy pleading or jurisdictional requirements, the complaint will be dismissed with prejudice. The court reminds Plaintiff that factual allegations in the amended complaint must, in good faith, "have evidentiary support, or . . . [be] likely [to] have evidentiary support after a reasonable opportunity for further investigation or discovery." FED. R. CIV. P. 11(b)(3). If Plaintiff chooses to file and serve an amended complaint and defendants again fail to respond, Plaintiff must reinitiate default proceedings in accordance with FED. R. CIV. P. 55. Plaintiff is reminded that she must properly serve defendants, file proof of such service and otherwise comply with the FED. R. CIV. P., the Local Rules of this court, and the undersigned's Individual Rules and Practices. Failure to do so may result in the imposition of sanctions.

SO ORDERED.

Dated: Brooklyn, New York
March 31, 2011

/s/
DORA L. IRIZARRY
United States District Judge